1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11   ROBERT MCCULLOCK,                        Case No.:  16-cv-00457-LAB (DHB)

12                              Plaintiff,    **REPORT AND**
                                              **RECOMMENDATION OF UNITED**
13   v.                                       **STATES MAGISTRATE JUDGE**
                                              **REGARDING MOTION TO**
14                                            **DISMISS CIVIL RIGHTS**
15   R. STEVEN THARRATT, et al.,              **COMPLAINT**

16                              Defendants.   **(ECF No. 15)**

17

18

19        Plaintiff Robert McCullock[1] ("Plaintiff"), a state prisoner proceeding *pro se* and *in*

20   *forma pauperi*s, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on

21   February 18, 2016, against Defendants R. Steven Tharratt, Daniel Paramo, Maryann Glynn,

22   Jin Kul Yu, Steven Roberts, and R. Walker.  (ECF No. 1 ("Compl.").)  On July 29, 2016,

23   Defendants Tharratt, Paramo, Glynn, Roberts, and Walker (collectively, "Defendants")

24

25

26   _____

27        [1]     Plaintiff's prison and medical records indicate Plaintiff's name is spelled

28   Robert McCallock.

                                              1

filed a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and on the grounds of qualified immunity. (ECF No. 15.)[2]

In accordance with Civil Local Rule 72.3, Defendants' Motion to Dismiss is referred to the Honorable David H. Bartick for a Report and Recommendation. After a thorough review of the pleadings, the parties' papers, and all supporting documents, the Court hereby **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** with leave to amend.

## I. BACKGROUND

Plaintiff is, and was at all relevant times, a prisoner confined at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California. (Compl. at 10.) Plaintiff alleges he had a specialist-recommended biopsy in February 2015. (*Id*. at 13.) On March 4, 2015, Defendant Dr. Yu, a primary care provider at RJD, documented in a progress note that the pathology report on the biopsy was not available and stated that s/he would obtain the report "and follow-up with [Plaintiff] to address this and rule out cancer." (*Id*. at 13, Exh. A.) On March 6, 2015, Defendant Dr. Yu obtained and initialed review of the pathology report. (*Id*.) The report allegedly noted a finding of "squamous cell carcinoma at deep margins." (*Id*.) However, Plaintiff alleges Defendant Dr. Yu did not provide him with notice of the results or take appropriate action. (*Id*. at 11, 13, Exh. A.)

Plaintiff learned of the pathology report's findings on April 29, 2015 from a specialist seeing Plaintiff via tele-medicine for valley fever. (*Id*. at 13, 26.) The specialist reviewed the pathology report's findings with Plaintiff, specifically discussed it in his or her report, and recommended that Plaintiff be referred to a specialist. (*Id*. at 13.) On May 1, 2015, Defendant Dr. Yu generated a "Request for Service" for plastic surgery and prioritized the referral as "routine." (*Id*.) In the Request for Service, Defendant Dr. Yu does not state that the pathology report finding cancer had been issued months earlier. (*Id*.)

---

[2]   Defendant Dr. Yu did not join the Motion to Dismiss. It appears Defendant Dr. Yu has not been served with a copy of the Complaint in this matter. (*See* ECF No. 12.)

On May 14, 2015, three specimens were excised from Plaintiff.  (*Id*. at 21-22, Exhs. B, C.)  The specimens, taken from both clavicles and the left shoulder, were negative.  (*Id*.)  The final diagnosis was mild actinic keratosis in all three specimens.  (*Id*. at 14, 21-22, Exhs. B, C.)  According to a Memorandum from California Correctional Health Care Services ("CCHCS"), dated June 2, 2015, Plaintiff did not have to follow up with plastic surgery at that time; however, he will require surveillance due to his higher risk for future malignancy.  (*Id*. at 21, Exh. B.)  This will be determined by his primary care provider and dermatology, if needed.  (*Id*.)

Plaintiff attaches to his Complaint a Training Participation Sign-In Sheet dated on or about May 12, 2015, which reflects that Defendants Walker and Roberts met with Defendant Dr. Yu regarding Plaintiff.  (*Id*. at 12, 54.)  Plaintiff further alleges that Defendant Dr. Yu was removed from his or her position in August 2015.  (*Id*. at 2.)

On May 5, 2015, Plaintiff filed a Citizen's Complaint.  (*Id*. at 15, 23-26.)  In the complaint, Plaintiff makes two allegations.  (*Id*. at 23-26.)  First, he alleges that "[w]hile at an appointment with the Valley Fever Specialist, I was informed I had cancer.  This information should be given by ones 'PCP,' primary care physician, not found by chance."  (*Id*. at 24.)  Plaintiff adds that the information was in the California Department of Corrections and Rehabilitation ("CDCR") system on March 6, 2015, but that he did not find out until April 29, 2015.  (*Id*. at 26.)  Second, Plaintiff alleges that Defendant Dr. Yu changed his prescriptions from the ones issued by the specialty doctors contracted by CDCR for their expertise.  (*Id*. at 26.)

Plaintiff's complaint was rejected at the First Level on May 30, 2015, and subsequently assigned to the Health Care Appeals Office for response on or around June 4, 2015, and assigned Log No. RJD HC 15053445.  (*Id*. at 15, 23-31.)  On June 17, 2015, Plaintiff was interviewed and examined by Defendant Dr. Yu.  (*Id*. at 30.)  At the First Level, Plaintiff's first issue was granted in part, with CCHCS stating that Plaintiff has been "evaluated, treated, monitored, and educated concerning [his] health issues consistent with the medical plan of care as determined by medical staff," and with Title 15.  (*Id*. at 30.)

The second issue was denied, with CCHCS claiming there was no evidence that any medications prescribed by a specialist were withheld by Plaintiff's primary care provider. (*Id*. at 30-31.)  Defendant Walker, as the Chief Physician & Surgeon at RJD, signed the appeal decision at the First Level, which is dated June 24, 2015.  (*Id*. at 31.)

Plaintiff appealed to the Second Level.  (*Id.* at 32-33.)  At the Second Level, Plaintiff's appeal was partially granted as to the first issue, and denied as to the second issue, on August 14, 2015.  (*Id*.)  As to the first issue, the Second Level decision from CCHCS states: "During your interview and examination with Dr. Yu on 06/17/15, your questions regarding your care were thoroughly addressed.  Medical records (eUHR) show the documentation of that visit and what was discussed.  Copies of those medical records can be obtained by completing the necessary request." (*Id*. at 32.)  The second issue was denied for the same reasons stated in the First Level response.  (*Id*.)  Defendant Roberts, as the Chief Medical Executive at RJD, and Defendant Glynn, as the Chief Executive Officer at RJD, signed the appeal decision at the Second Level.  (*Id*. at 33.)

Plaintiff appealed to the Third Level.  (*Id.* at 34-36.)  The appeal was denied on October 8, 2015, thereby exhausting Plaintiff's administrative remedies.  (*Id*. at 35-36.)  As to the first issue, the Third Level decision notes: "[Inmate Correspondence and Appeals Branch] records indicate the Prison Law Office advocated on your behalf regarding the [primary care provider] not notifying you of the March 6, 2015, diagnostic test results.  As noted in the response to the [Prison Law Office], this was an oversight on the physician's part." (*Id*. at 35.)  The decision also states that Plaintiff had received ongoing follow-up evaluation and treatment by his primary care provider to September 16, 2015, for his history of "squamous cell cancer to left shoulder/clavicular area status post excision with wider biopsy showing acitinic keratosis (no skin cancer)." (*Id*.)

On May 29, 2015, Plaintiff filed a separate Patient/Inmate Health Care Appeal (Log No. 15053343).  (*Id*. at 37-40.)  Plaintiff's grievance is that he was forced to see Defendant Dr. Yu, against whom he had a Citizen's Complaint pending, or be denied medical care. (*Id*. at 37.)  Plaintiff requested to see a doctor that "gives treatment in a timely manner,

who understands that Valley Fever is not cured, but controlled, that treats cancers as soon as found, and completely." (*Id.*) Plaintiff's appeal was partially granted at the First and Second Levels, with CCHCS finding that Plaintiff had been evaluated, treated, monitored, and educated concerning his health issues consistent with his medical plan of care as determined by his primary care provider, Title 15, and recognized standards of care. (*Id.* at 42-45.) The First Level Appeal was signed by Defendant Walker and the Second Level Appeal was signed by Defendants Roberts and Glynn. (*Id.*)

At the Third Level, in a decision dated September 4, 2015, Plaintiff's request to be assigned to a "doctor who gives treatment in a timely manner, understands that Valley Fever is not cured, but controlled, and treats cancers as soon as found" was denied. (*Id.* at 46-47.) The Third Level appeal decision provides the following summary of Plaintiff's relevant medical history:

- On June 19, 2015, you received a dermatology follow up visit noting your history of skin biopsies in February 2015, with the finding of squamous cell cancer – lesions was excised; your skin was examined with the finding of multiple actinic keratoses that were treated with liquid nitrogen; and suspicious lesions to right deltoid, left pectoralis areas were biopsied.
- A [primary care provider] follow up appointment took place on July 2, 2015, noted discussion of skin biopsy finding of actinic keratosis; you were advised to avoid sun exposure and to use solar precautions.

(*Id.* at 46.)

On July 23, 2015, Plaintiff filed another Patient/Inmate Health Care Appeal (Log No. 15053656) seeking monetary compensation for unnecessary surgery for misdiagnosed squamous cell carcinoma. (*Id.* at 48-49.) The appeal was denied at the Third Level, stating that monetary compensation is beyond the scope of the appeals process. (*Id.* at 52.) The Victim Compensation and Government Claims Board subsequently rejected Plaintiff's claim on August 20, 2015. (*Id.* at 53.)

In his Complaint, Plaintiff brings a claim against all defendants for deliberate indifference to medical needs in violation of the Eighth Amendment. (*Id.* at 4-5, 15-16.)

He seeks compensatory and punitive damages, pain and suffering and emotional distress damages, declaratory relief, and a preliminary and permanent injunction ordering Defendants to transfer Plaintiff to a facility where he will receive competent medical care. (*Id*. at 8-9.)

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). For a plaintiff to overcome a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "[T]he pleading standard Rule 8 announces does not require 'detailed factual

6

allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''"  *Id.* (quoting *Twombly*, 550 U.S. at 570 (when plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Because Rule 12(b)(6) focuses on the sufficiency of a claim rather than the claim's substantive merits, "[o]rdinarily, a court may look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  Generally, a court may not consider material beyond the complaint in ruling on a Rule 12(b)(6) motion.  *Schneider v. Cal. Dep't of Corr. & Rehab.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)  "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### B.    Standards Applicable to *Pro Se* Litigants in Civil Rights Actions

"In a civil rights case where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford [the] plaintiff the benefit of any doubt."  *Karim–Panahi*

1  *v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is

2  "particularly important in civil rights cases."  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th

3  Cir. 1992).  In giving liberal interpretation to a *pro se* civil rights complaint, courts may

4  not "supply essential elements of claims that were not initially pled."  *Ivey v. Bd. of Regents

5  of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory

6  allegations of official participation in civil rights violations are not sufficient to withstand

7  a motion to dismiss."  *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th

8  Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim

9  under § 1983).

10  Nevertheless, a court must give a *pro se* litigant leave to amend his complaint "unless

11  it determines that the pleading could not possibly be cured by the allegation of other facts."

12  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing

13  *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)).  Thus, before a *pro se* civil rights

14  complaint may be dismissed, the Court must provide the plaintiff with a statement of the

15  complaint's deficiencies.  *Karim–Panahi*, 839 F.2d at 623-24.  But where amendment of a

16  *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate.  *James

17  v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

18  ## III.   DISCUSSION

19  Section 1983 "is not itself a source of substantive rights, but a method for vindicating

20  federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  It

21  imposes two essential proof requirements upon a claimant: (1) that a person acting under

22  color of state law committed the conduct at issue; and (2) that the conduct deprived the

23  claimant of some right, privilege, or immunity protected by the Constitution or laws of the

24  United States.  *See* 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981),

25  *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v.

26  Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).  Here, there appears to be no

27  dispute that Defendants acted under color of state law in their official capacities as

28

employees of RJD or CCHCS.[3]  "[G]enerally, a public employee acts under color of state law while acting in his [or her] official capacity or while exercising his [or her] responsibilities pursuant to state law."  *West v. Atkins*, 487 U.S. 42, 50 (1988).  Thus, Plaintiff's federal claims turn on the second inquiry, namely, whether Defendants deprived Plaintiff "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.

### A.    Deliberate Indifference to Medical Needs (Eighth Amendment)

In his Complaint, Plaintiff alleges Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment's prohibition of cruel and unusual punishment.  (Compl. at 4, 5, 15.)  Specifically, Plaintiff alleges that although his primary care provider, Defendant Dr. Yu, obtained and reviewed Plaintiff's pathology report, which contained a finding of "squamous cell carcinoma at deep margins," on March 6, 2015, he "did not understand the report, and most certainly did not follow-up with [Plaintiff] or take appropriate action."  (*Id*. at 4, 13.)  Plaintiff alleges he did not learn of the pathology report's findings until April 29, 2015, nearly two months later, from a specialist seeing Plaintiff via tele-medicine for valley fever.  (*Id*. at 13.)  Thereafter, on May 1, 2015, Defendant Dr. Yu generated a Request for Service for plastic surgery, allegedly improperly prioritizing the referral as "routine."  (*Id*.)

In his Complaint, Plaintiff cites to and attaches a letter, dated May 11, 2015, drafted by the Prison Law Office and addressed to CCHCS and the Receiver's Office of Legal Affairs.  (Compl. at 13-14, 19-20 (Exh. A.)  The Prison Law Office asked two questions:

> 1.    Why did the [primary care provider] who reviewed the pathology report on 3/6/15 neither notify [Plaintiff] of the results nor take appropriate

---

[3]    Defendant Tharratt is alleged to be a Director of Health Care Operations for CCHCS.  (Compl. at 2, 10.)  Defendant Paramo is alleged to be the Warden of RJD.  (*Id*.)  Defendant Glynn is alleged to be the Chief Executive Officer of Medical at RJD.  (*Id*. at 2, 11, 33.)  Defendant Roberts is alleged to be the Chief Medical Executive at RJD.  (*Id*. at 3, 12, 21.)  Defendant Walker is alleged to be the Chief Physician and Surgeon at RJD.  (*Id*. at 3, 21, 31.)

action at that time, or at any time until another specialist raised concerns on 4/29/15?

2. Was the 5/1/15 [Request for Service] for plastic surgery approved, and has the appointment been scheduled/taken place? Is prioritizing that referral as routine appropriate, including because of the apparent delay in initiating the referral? Please explain.

(Compl. at 19-20 (Exh. A).)

A member of the Litigation Support Unit for CCHCS responded on June 2, 2015, as follows:

1. What were the pathology results of the specimens excised from Mr. McCallock on 5/14/15, and what is the updated assessment and treatment plan? *The pathology specimens from both clavicles and the left shoulder were negative. The final diagnosis was actinic keratosis in all three specimens. Mr. McCallock does not have to follow-up with plastic surgery at this point in time; however, he will require surveillance due to his higher risk for future malignancy. This will be determined by his PCP and dermatology if needed. Attached is supporting documentation.*

(Compl. at 21 (Exh. B).)  In his Complaint, Plaintiff notes that he did not receive a response to the latter half of the second question posed by the Prison Law Office. (*Id*. at 14, lines 10-13.)

Plaintiff also attaches to his Complaint a copy of Page 2 of an Alvarado Hospital Medical Center report, dated May, 20, 2015. (Compl. at 22 (Exh. C).)  The report provides the laboratory results of Plaintiff's excisions, which took place on May 14, 2015. (*Id*. at 21-22 (Exhs. B, C).)  The report further notes in a "Comment" section, the following:

The previous surgical pathology report from Tri-City medical center is reviewed.  The patient has a history of incompletely excised squamous cell carcinoma and the material is excised to obtain clear margins.  There is no invasive lesion remaining.  There is some melanocytic atypia.  The case is reviewed within the department.  Some areas are concerning for lentigo, but no invasive lesion, either squamous or melanotic, is identified.  Please correlate with clinical findings.  If a pigmented lesion is clinically remaining, it should be submitted for histologic examination.

(*Id*. at 22 (Exh. C).)  In his Complaint, Plaintiff asks: "Where is 'previous surgical'?" and

16-cv-00457-LAB (DHB)

"Why is it incompletely excised?"  (*Id.* at 14, lines 16-18.)  He further notes that, "[i]n the end, the diagnosis is mild actinic keratosis," which he alleges he is receiving treatment for from a skin specialist at Tri-City Medical Center.  (*Id.*)

In summary, the Court construes Plaintiff's Complaint to allege the following: Defendant Dr. Yu was deliberately indifferent to Plaintiff's medical needs in the following ways: (1) he neglected to inform Plaintiff of the March 6, 2015 pathology report finding of "squamous cell carcinoma at deep margins" until Plaintiff discovered and raised the issue himself nearly two months later; and (2) he improperly prioritized the May 1, 2015 Request for Service for plastic surgery as "routine."  Plaintiff further alleges the moving Defendants were deliberately indifferent by failing to prevent Defendant Dr. Yu's violations, including a failure to train.[4]

Defendants move to dismiss Plaintiff's claim of deliberate indifference against them pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 15.)  Defendants argue that Plaintiff's claim, which is "based on a delay in diagnosing and treating his skin cancer[,] . . . should be dismissed because his allegations fail to show that the moving Defendants were personally involved in the evaluation, diagnosis, or treatment of Plaintiff's skin cancer."  (ECF No. 15-1 ("Mot.") at 2, lines 9-12.)  Defendants contend "Plaintiff's claim against [them] is either based on their roles as supervisors, or

_____

[4]   Although Plaintiff appears to be concerned about the Comment noting a "history of incompletely excised squamous cell carcinoma," and alleges unnecessary surgery for misdiagnosed squamous cell carcinoma, he does not make any allegations against Defendants or Defendant Dr. Yu with regard to these concerns.  Plaintiff also notes that he did not have the symptoms of squamous cell carcinoma, and was being properly treated for actinic keratosis by a skin specialist at Tri-City Medical Center.  (Compl. at 14, 35.)  Therefore, the Court does not construe the Complaint as alleging improper treatment for his diagnosed actinic keratosis.  Plaintiff also attaches CDCR health care appeals which address Defendant Dr. Yu's alleged failure to provide certain prescriptions and improper statements he made concerning Plaintiff's valley fever.  However, Plaintiff makes no allegations regarding these issues in the Complaint, and the Court declines to construe the Complaint as including them.  *See Ivey*, 673 F.2d at 268.

involvement in the medical appeal process, neither of which create liability under 42 U.S.C. § 1983." (*Id*. at 2, lines 12-14.) Defendants further argue that "Plaintiff has not pled facts showing that Defendants . . . participated in or directed any violations, or knew of any violation and failed to act to prevent it," and that "Plaintiff's apparent dissatisfaction with the outcome of his administrative appeals is not a basis for holding Defendants liable for the alleged violation that was the subject matter of those appeals." (*Id*. at 5, lines 15-17; 6, lines 21-23.) Lastly, Defendants argue that even if the Court were to find that Defendants possessed the requisite state of mind, Plaintiff still fails to allege a claim for deliberate indifference, and that Defendants are entitled to qualified immunity. (*Id*. at 6-12.)

In his opposition, Plaintiff argues that Defendants have come "to the wrong conclusion," asserting "[t]here was no treating of skin cancer because there was no skin cancer." (ECF No. 17 at 1.) Rather, "[t]he delay was because everyone that should be responsible, from the original biopsy to the [Request for Service] Form 7243, that was instigated by the Valley Fever Specialist's RN, failed in their care." (*Id*.) Plaintiff argues that Defendants "were personally involved, or should have been involved and failed to act." (*Id*.) He contends the failure to be involved amounted to "recklessness," which he claims is an ongoing problem at RJD. (*Id*. at 1-2.)

For the first time in his opposition, Plaintiff also alleges the CCHCS review process failed, the excisions amounted to an unnecessary surgery, and RJD, CDCR, and CCHCS are deliberately indifferent on the subject of skin cancer because they do not provide prisoners with adequate protection (e.g., a wide-brimmed hat). (*Id*. at 2-7.) However, "[t]he 'new' allegations contained in [Plaintiff's] opposition motion . . . are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider*, 151 F.3d at 1197 n.1; *see also Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). Therefore, while the new allegations may be considered by the Court in determining whether granting leave to amend is appropriate, the Court will not consider these new allegations in deciding whether

Plaintiff's present Complaint states a claim against Defendants.  *See Broam*, 320 F.3d at 1026 n.2 ("Facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice.")

### 1. <u>Deliberate Indifference to Serious Medical Needs</u>

#### a. *Applicable Law*

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  This principle "establish[es] the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.*  The Supreme Court has noted that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.*; *see also West*, 487 U.S. at 54-55.

Prison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment if they are deliberately indifferent to his serious medical needs. *See Gamble*, 429 U.S. at 104-06; *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Gamble*, 429 U.S. at 104-05 (footnotes omitted).  To establish deliberate indifference to serious medical needs, the Ninth Circuit requires a two-step inquiry. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

First, the prisoner must have a serious medical need.  *Id.*  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Gamble*, 429 U.S. at 104), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).  In making this

16-cv-00457-LAB (DHB)

determination, courts should consider whether "a reasonable doctor or patient would find [the prisoner's condition] important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990); *Hunt*, 865 F.2d at 200-01).

Second, the prisoner must establish that prison officials exhibited deliberate indifference to the serious medical need. *Jett*, 439 F.3d at 1096. This requirement "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1059). The indifference to medical needs also must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Gamble*, 429 U.S. at 106; *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.") (citing *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) ("Mere medical malpractice does not constitute cruel and unusual punishment."); *Wood*, 900 F.2d at 1334 (stating that even gross negligence is insufficient to establish a constitutional violation)).

The deliberate indifference standard includes a subjective intent requirement and is not met "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Courts must focus on the seriousness of the prisoner's medical needs and the nature of the defendants' response to those needs. *See McGuckin*, 974 F.2d at 1059. Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough

to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Deliberate indifference can be established when "prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *McGuckin*, 974 F.2d at 1059 (citation omitted). However, a mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay or denial was harmful. *Id.* at 1060 (quoting *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)); *Hunt*, 865 F.2d at 200 ("[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an [E]ighth [A]mendment violation."). While the harm caused by delay need not necessarily be "substantial," *McGuckin*, 974 F.2d at 1060 & n.12, the Eighth Amendment is violated if "delays occurred to patients with problems so severe that delays would cause significant harm and that [the d]efendants should have known this to be the case," *Hallett*, 296 F.3d at 746, and "a finding that the inmate was seriously harmed by the defendant's action or inaction tends to provide additional *support* to a claim that the defendant was 'deliberately indifferent' to the prisoner's medical needs: the fact that an individual sat idly by as another human being was seriously injured despite the defendant's ability to prevent the injury is a strong indicium of callousness and deliberate indifference to the prisoner's suffering." *McGuckin*, 974 F.2d at 1060 (citing *Gamble*, 429 U.S. at 106).

### i.   Supervisory Liability

"'Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability.'" *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (quoting *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989)). "'A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."'" *Id.* (quoting *Hansen*, 885 F.2d at 646); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). In order to demonstrate a sufficient causal connection, "a plaintiff must show the supervisor breached a duty to plaintiff which was

the proximate cause of the injury." *Starr*, 652 F.3d at 1207 (quoting *Redman v. Cnty. Of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others,' . . . , or by 'knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Id*. at 1207-08 (internal citations omitted and alteration in original).

"A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted); *see also Starr*, 652 F.3d at 1207 ("[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates."). Supervisory liability may also exist "if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation.'" *Crowley*, 734 F.3d at 977 (quoting *Hansen*, 885 F.2d at 646); *see also OSU Student Alliance v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012) ("Advancing a policy that requires subordinates to commit constitutional violations is always enough for § 1983 liability, no matter what the required mental state, so long as the policy proximately causes the harm—that is, so long as the plaintiff's constitutional injury in fact occurs pursuant to the policy.")

### b.   *Analysis*

Defendants do not dispute, and the Court agrees, that Plaintiff's skin cancer, or suspected skin cancer, constitutes a serious medical need.[5] Therefore, the Court now turns

---

[5]      According to the Complaint and its attachments, the pathology report received on March 6, 2015, relating to a February 2015 biopsy, made a finding of skin cancer. However, when further excisions were made on May 14, 2015, there was no finding of skin

to whether Defendants were deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment.

### i.   Defendant Tharratt

Plaintiff alleges Defendant Tharratt is the Director of Health Care Operations for CCHCS.  (Compl. at 2, 10.)  Plaintiff alleges that in this capacity he is "legally responsible for the overall operation of [CCHCS] and each institution under its jurisdiction, including [RJD]."  (*Id*. at 10.)  Without identifying the policy, Plaintiff contends that Defendant Tharratt's "policy is and was so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." (*Id*.)  Plaintiff also alleges that Defendant Tharratt knew or should have known about the facilities under his control or authority, and "was informed, and failed to act to prevent" the alleged constitutional violations.  (*Id*. at 2, 10.)

Plaintiff does not allege any facts to support personal involvement or direct action by Defendant Tharratt in the alleged constitutional violations.   Therefore, Plaintiff's Complaint relies on a theory of supervisory liability to establish liability.  Other than stating that Defendant Tharratt knew or should have known of the alleged constitutional violations, Plaintiff's Complaint does not contain any factual allegations which allow the Court to draw the reasonable inference that Defendant Tharratt knew or should have known of Defendant Dr. Yu's alleged constitutional violations.

As stated above, "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's **knowledge of** and acquiescence in unconstitutional conduct."  *Starr*, 652 F.3d at 1207 (emphasis added).  In addition, a plaintiff may state a claim against a supervisor for deliberate indifference if the supervisor "**knowingly** refus[es] to terminate a series of acts by others, which [the supervisor] **knew**

_____

cancer.  Accordingly, for purposes of this Order, the Court construes Plaintiff's Complaint as alleging Plaintiff had skin cancer at one time, but does not currently have skin cancer. When the skin cancer was first diagnosed, and later fully excised, remains unclear.

16-cv-00457-LAB (DHB)

**or reasonably should have known** would cause others to inflict a constitutional injury." *Id.* at 1207-08 (emphasis added) (citing *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001)).   In order to sufficiently allege knowledge, however, the allegations cannot be bald or conclusory.  In *Starr* and *Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012), the Ninth Circuit discusses the allegations required to sufficiently allege a claim of supervisory liability.

In *Starr*, the plaintiff alleged the defendant sheriff was liable for unconstitutional conditions of confinement in violation of the Eighth and Fourteenth Amendments because he "knew or should have known about the dangers in the Los Angeles County Jail, and that he was deliberately indifferent to those dangers."  *Starr*, 652 F.3d at 1204-05.  The Ninth Circuit held the plaintiff pleaded sufficient facts to plausibly suggest the defendant sheriff's "knowledge of" and "acquiescence in" the unconstitutional conduct of his subordinates. *Id.* at 1207-08, 1216.

In finding the complaint satisfied Federal Rule of Civil Procedure 8(a)'s pleading standard, the Ninth Circuit relied on the fact the complaint "makes detailed factual allegations that go well beyond reciting the elements of a claim of deliberate indifference." *Id.*; *see also Hydrick*, 669 F.3d at 940.  These detailed factual allegations include:

> (a) a letter Sheriff Baca received from the Department of Justice in 1997 discussing a pattern and practice of "abuse of inmates by sheriff's deputies working in the jail and inmate on inmate violence"; (b) weekly reports Sheriff Baca received "from his subordinates responsible for reporting deaths and injuries in the jails"; (c) a 1999 Memorandum of Understanding that Sheriff Baca and the County of Los Angeles entered into with the Department of Justice, where Sheriff Baca and the County agreed to "address and correct the continuous constitutional violations to which inmates were being subjected"; (d) a 2006 report by the Department of Justice which found "noncompliance with many of its recommendations regarding the abuse of inmates"; (e) an incident in 2002 where Sheriff Baca was informed of a physical attack on an inmate by a sheriff's deputy and the inmate's subsequent death, and no investigation was conducted; (f) the deaths of two inmates in 2003 as a result of lax oversight by sheriff's deputies; (g) the deaths of three inmates in 2004 as a result of lax oversight by sheriff's deputies; and, (h) a 2005 incident where an inmate who was booked on a non-violent misdemeanor was misclassified

by sheriff's deputies, placed near "high risk" inmates, and beaten to death by fellow inmates.

*Hydrick*, 669 F.3d at 941 (citing *Starr*, 652 F.3d at 1209-11).

Thus, the complaint "specifically allege[d] numerous incidents in which inmates in Los Angeles County jails have been killed or injured because of the culpable actions of the subordinates" of the defendant sheriff, the defendant sheriff "was given notice, in several reports, of systematic problems in the county jails under his supervision that have resulted in these deaths and injuries," and he did not take action to protect inmates under his care. *Starr*, 652 F.3d at 1216.   These factual allegations "plausibly suggest[ed] that [the defendant sheriff] acquiesced in the unconstitutional conduct of his subordinates, and was thereby deliberately indifferent to the danger posed to [the plaintiff]." *Id*.  Based on these allegations, the Ninth Circuit found there was no "obvious alternative explanation, within the meaning of *Iqbal*," for why the defendant sheriff took no action to stop his subordinates' repeated violations other than deliberate indifference.  *Id*.

In contrast, in *Hydrick*, the Ninth Circuit determined that plaintiffs, a class of civilly committed persons at Atascadero State Hospital, failed to state a Section 1983 claim against hospital administrators and other supervisory defendants.  *Hydrick*, 669 F.3d at 941.  Unlike in *Starr*, the Ninth Circuit reasoned, the "[p]laintiff's complaint is based on conclusory allegations and generalities, without any allegation of the specific wrong-doing by each [d]efendant . . . . [T]here is no allegation of . . . a *specific* policy implemented by the [d]efendants or a *specific* event or events instigated by the [d]efendants that led to [the] purportedly unconstitutional [conduct]." *Id*. at 942 (emphasis in original).  Nor were there "specific allegations regarding each [d]efendant's purported knowledge" of the allegedly unconstitutional conduct.  *Id*.  Rather, the plaintiffs' claims against the defendants were "devoid of specifics."  *Id*.  To establish supervisory liability for deliberate indifference, a plaintiff "must still allege sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates."  *Id*. (citing *Starr*, 652 F.3d at 1206-07).   Relying on *Iqbal*, the Court stated that "bald" and

16-cv-00457-LAB (DHB)

1    "conclusory" allegations are insufficient to establish individual liability under Section

2    1983. *Id.*

3    Here, the Complaint is devoid of any factual allegations by which the Court can draw

4    the reasonable inference that Defendant Tharratt is liable for deliberate indifference.

5    Although Plaintiff alleges in conclusory fashion that Defendant Tharratt, by virtue of his

6    position, knew or should have known about the facilities under his control or authority, he

7    does not make any specific allegations, in contrast to *Starr*, demonstrating that Defendant

8    Tharratt knew or had reason to know of Defendant Dr. Yu's alleged constitutional

9    violations.   *See Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012) (finding

10   insufficient allegations against individual defendants who directed agencies which have

11   oversight responsibility and are required to ensure compliance with state and federal law,

12   in the absence of allegations that the individuals had "any personal knowledge of the

13   specific constitutional violations that led to [the p]laintiffs' injuries, or that they had any

14   direct responsibility to train or supervise the" offending subordinate).

15   Moreover, while supervisory liability may exist "if supervisory officials implement

16   a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is

17   'the moving force of a constitutional violation,'" *Crowley*, 734 F.3d at 977, Plaintiff does

18   not identify any policy implemented by Defendant Tharratt.  Accordingly, the Court finds

19   Plaintiff has failed to allege sufficient facts to indicate Defendant Tharratt acted with the

20   requisite culpable state of mind to establish liability for deliberate indifference. *See Wilson*,

21   501 U.S. at 297; *Farmer*, 511 U.S. at 837.

22   Based on the foregoing, the Court finds Plaintiff has failed to state a claim against

23   Defendant Tharratt.

### ii.    Defendant Paramo

25   Plaintiff alleges Defendant Paramo is the Warden of RJD. (Compl. at 2, 10.)  As the

26   Warden, Plaintiff alleges Defendant is responsible for the safe custody of the inmates

27   confined at RJD, citing California Code of Regulations, Title 15, Section 3271. (*Id*. at 2,

28   10.)  Plaintiff alleges that Defendant Paramo was "informed and failed and is failing to still

prevent" the constitutional violations alleged by Plaintiff.  (*Id.* at 11.)

As with Defendant Tharratt, Plaintiff does not allege any facts to support personal involvement or direct action by Defendant Paramo in the alleged constitutional violations. Therefore, Plaintiff's Complaint relies on a theory of supervisory liability to establish liability.   In the Complaint, Plaintiff makes the conclusory allegation that Defendant Paramo was informed of the constitutional violations alleged by Plaintiff.  (Compl. at 11.) However, Plaintiff does not identify when or how Defendant Paramo was informed of the alleged constitutional violations.   For the reasons stated above, absent any factual allegations plausibly suggesting Defendant Paramo's knowledge of and acquiescence in the unconstitutional conduct of Defendant Dr. Yu,  Plaintiff has not alleged sufficient facts to allow the Court to draw the reasonable inference that Defendant Paramo is liable for the misconduct alleged.  *See Starr*, 652 F.3d at 1207-08, 1216; *Hydrick*, 669 F.3d at 941; *Henry A.*, 678 F.3d at 1004.

Accordingly, the Court finds Plaintiff has failed to state a claim against Defendant Paramo.

### iii.   Defendant Glynn

Plaintiff alleges Defendant Glynn is the Chief Executive Officer of medical at RJD. (Compl. at 2, 11, 33.)  He alleges that she is legally responsible for the overall health care operation at RJD.  (*Id.* at 11.)  He alleges that she "did not monitor employees under [her] authority for licensing and competency."  (*Id.* at 2.)  He contends that Defendant Dr. Yu should have been "trained from the beginning, rather then [sic] after the abuse, at which point the thirdty [sic] minute training was useless."  (*Id.* at 11.)  He further alleges that she was informed via CDCR 602 HCs and a Citizen's Complaint of the alleged constitutional violations against Plaintiff and took no action, and violated California Code of Regulations, Title 15, Section 3271 by failing to maintain the safe custody of inmates at RJD.  (*Id.* at 2, 11.)

Plaintiff attaches to his Complaint an Institution Response for Second Level HC Appeal from CCHCS, dated August 14, 2015, in response to his internal complaints.  (*Id.*

at 32-33.)  The response is signed by Defendant Roberts as the Chief Medical Executive at RJD and Defendant Glynn as the Chief Executive Officer at RJD.  (*Id.*)  Plaintiff makes no further allegations against Defendant Glynn.

First, Plaintiff alleges that Defendant Glynn failed to monitor Defendant Dr. Yu for licensing and competency, and failed to train Defendant Dr. Yu in a timely manner.  In the Complaint, Plaintiff does not allege that Defendant Dr. Yu, a primary care provider at RJD, was improperly licensed.  Therefore, Plaintiff has not sufficiently alleged a causal connection between Defendant Glynn's conduct and any alleged constitutional violation.

As to Defendant Dr. Yu's competency, Plaintiff alleges "it appears [Defendant Dr. Yu] did not understand the report" and did not follow up with Plaintiff.  (Compl. at 4, 11.) Plaintiff makes no specific allegation that Defendant Glynn knew, or should have known, of Defendant Dr. Yu's alleged incompetency.  As stated above, Plaintiff must make specific factual allegations regarding Defendant Glynn's knowledge sufficient to plausibly establish her knowledge of and acquiescence in the alleged unconstitutional conduct of Defendant Dr. Yu.

To the extent Plaintiff relies on his CDCR 602 HCs and Citizen's Complaint to establish knowledge, the timeline alleged in the Complaint suggests that these grievances were filed after the alleged constitutional violations.  Plaintiff first alleges Defendant Dr. Yu received the pathology report at issue on March 6, 2015 and failed to take appropriate action.  (Compl. at 13.)  Defendant Dr. Yu thereafter generated the Request for Service, allegedly improperly prioritizing the referral as "routine," on May 1, 2015.  (*Id.*)  Plaintiff's Citizen's Complaint was filed with RJD on May 5, 2015.  (*Id.* at 24.)  Defendants Walker and Roberts met with Defendant Dr. Yu regarding Plaintiff for an apparent thirty-minute training on May 12, 2015.  (*Id.* at 54.)  Plaintiff underwent the referred procedure on May 14, 2015.  (*Id.* at 20, 21.)  Defendant Glynn signed the Institution Response for Second Level Appeal on August 14, 2015.  (*Id.* at 32.)  Based on this timeline, Plaintiff did not file his grievances, and Defendant Glynn was not involved, until after the alleged unconstitutional violations occurred.  Accordingly, the Court finds Plaintiff has not

sufficiently alleged that Defendant Glynn knew or had reason to know of Defendant Dr. Yu's alleged incompetency prior to the alleged unconstitutional acts.

As stated above, the causal connection required to establish supervisory liability can also include a supervisor's "inaction in the training, supervision, or control of his subordinates." *See Watkins*, 145 F.3d at 1093; *see also Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2014). Supervisors are only liable, however, if they are on actual or constructive notice of the need to train. *Lemire*, 726 F.3d at 1085 (citing *Farmer*, 511 U.S. at 841). Based on the timeline laid out above, the Court finds Plaintiff has not sufficiently alleged that Defendant Glynn was on actual or constructive notice of the need to train prior to the alleged constitutional violations occurring.

For the foregoing reasons, the Court finds Plaintiff has failed to state a claim against Defendant Glynn.

### iv.   Defendant Roberts

Plaintiff alleges Defendant Roberts is the Chief Medical Executive at RJD. (Compl. at 3, 12, 21.) Plaintiff alleges Defendant Roberts was put on notice of the alleged constitutional violations via CDCR 602, California Code of Regulations, Title 15, Section 3271, a memorandum from the Prison Law Office, dated May 11, 2015, and the response from CCHCS, dated June 2, 2015, and failed to act. (Compl. at 3, 19-21.) Plaintiff further alleges Defendant Roberts was responsible for the training and supervision of medical staff at CCHCS and RJD and failed to train Defendant Dr. Yu. (*Id.* at 12.) Lastly, Plaintiff contends Defendant Roberts violated California Penal Code section 422.6(a). (*Id.*)[6]

---

[6]   Although the Court does not construe this to be a cause of action in Plaintiff's Complaint against Defendants Roberts and Walker, the Court notes that this Penal Code section does not provide for a private right of action or imply that a civil remedy is available. *See Thomas v. Rest.*, No. 15-cv-01113-DAD (SKO), 2015 WL 9583029, at *2, n. 3 (E.D. Cal. Dec. 31, 2015); *Jianjun Xie v. Oakland Unified Sch. Dist.*, No. C 12-02950 CRB, 2012 WL 5869707, at *5 (N.D. Cal. Nov. 19, 2012); *Womack v. Metro. Transit Sys.*, No. 09cv2679 BTM (NLS), 2011 WL 839387, at *5 (S.D. Cal. Feb. 28, 2011).

1   Similar to Defendant Glynn, Defendant Roberts signed the Institution Response for

2   Second Level HC Appeal from CCHCS, dated August 14, 2015, in response to Plaintiff's

3   CDCR 602 complaints.  (Compl. at 32-33.)  Defendant Roberts also participated, as noted

4   above, in the apparent thirty-minute training regarding Plaintiff on May 12, 2015 with

5   Defendants Walker and Yu.  (*Id*. at 12, 54.)

6   Plaintiff does not allege any facts to support personal involvement or direct action

7   by Defendant Roberts in the alleged constitutional violations.  Therefore, Plaintiff's

8   Complaint relies on a theory of supervisory liability to establish liability.  Plaintiff alleges

9   Defendant Roberts failed to prevent the alleged constitutional violations and failed to train

10  Defendant Dr. Yu.  However, Plaintiff does not sufficiently allege the subjective

11  component of supervisory liability.  Given the timeline set forth in the Complaint, and

12  outlined above, Plaintiff does not allege that Defendant Roberts knew or should have

13  known of the alleged violations prior to May 12, 2015, when the training took place, which

14  is after the alleged constitutional violations occurred.  Therefore, Plaintiff has failed to

15  allege sufficient facts by which the Court can draw the reasonable inference that Defendant

16  Roberts is liable for deliberate indifference.

17  Accordingly, the Court finds Plaintiff has failed to state a claim against Defendant

18  Roberts.

19                    v.    Defendant Walker

20  Plaintiff alleges Defendant Walker is the Chief Physician and Surgeon at RJD.

21  (Compl. at 3, 21, 31.)  Plaintiff contends Defendant Walker was put on notice of the alleged

22  constitutional violations via CDCR 602, California Code of Regulations, Title 15, Section

23  3271, and an "Evaluation of RJD" from Case No. 01-cv-01351-THE,[7] and failed to act.

24  _____

25      [7]    The Court believes Plaintiff is referring to the "R.J. Donovan Correctional

26  Facility Health Care Evaluation," dated March 18, 2013 (ECF No. 2572), in *Plata v.*

27  *Brown*, Case No. 01-cv-01351-TEH (N.D. Cal.).  The report's "Overall Finding" is that

28  RJD "is not providing adequate medical care, and that there are systemic issues that present

an on-going serious risk of harm to patients and result in preventable morbidity and

(Compl. at 3, 12.)  Plaintiff further alleges Defendant Walker was legally responsible for his subordinates' training and supervision and his thirty minute "after the fact" training of Defendant Dr. Yu was "inadequate."  (*Id*. at 12.)  Plaintiff alleges that Defendant Walker was willfully blind to multiple appeals concerning Defendant Dr. Yu, dated May 5, 2015 (Log Nos. 15-1861/15053445) and May 29, 2015 (Log No. 15053343), and failed to prevent the constitutional violations. (*Id*. at 12, 24-47.)  Lastly, Plaintiff alleges Defendant Walker violated California Penal Code section 422.6(a).

Plaintiff again does not allege any personal involvement or direct action by Defendant Walker in the alleged constitutional violations.  Therefore, Plaintiff's Complaint relies on a theory of supervisory liability to establish liability.  In addition to the May 12, 2015 training, Plaintiff alleges Defendant Walker signed the appeal decision at the First Level, which is dated June 24, 2015.  (*Id*. at 31.)  As with Defendant Roberts, based on the timeline set forth in the Complaint, Plaintiff does not allege that Defendant Walker had actual or constructive knowledge of the alleged violations prior to May 12, 2015, when the training took place, which is after the alleged constitutional violations occurred.  To the extent Plaintiff relies on the RJD Evaluation, which was issued in March 2013, to put Defendant Walker on notice of Defendant Dr. Yu's alleged constitutional violations in 2015, the Court finds Plaintiff does not sufficiently allege a connection between the report and the violations at issue.  Accordingly, the Court finds Plaintiff has failed to state a claim against Defendant Walker.

For the foregoing reasons, the Court finds Plaintiff has failed to sufficiently allege a deliberate indifference claim against Defendants and recommends that Defendants' motion to dismiss be granted for failure to state a claim.  As the Court finds Plaintiff has failed to

---

mortality."  (*Id*. at 5.)  In the report, Court Medical Experts described their findings and made several recommendations.  (*Id*. at 3-50.)  For purposes of this Motion to Dismiss, the Court takes judicial notice of the existence and filing of the report.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings).

16-cv-00457-LAB (DHB)

sufficiently allege a claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment against Defendants, the Court need not address Defendants' remaining arguments.

## IV.   CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Larry A. Burns pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.3.  For the reasons outlined above, IT IS HEREBY RECOMMENDED that the District Judge issue an order:

1.   Approving and adopting this Report and Recommendation;

2.   Granting Defendants' Motion to Dismiss with leave to amend; and

3.   Ordering Plaintiff to show cause why Defendant Jin Kul Yu should not be dismissed without prejudice for failure to prosecute pursuant to Federal Rule of Civil Procedure 4(m), in that it appears he has not been served with the Complaint.

IT IS FURTHER ORDERED that no later than **February 10, 2017**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be filed with the Court and served on all parties no later than **February 22, 2017**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  January 20, 2017

LOUISA S PORTER
United States Magistrate Judge

16-cv-00457-LAB (DHB)