UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MCCULLOCK,<br><br>          Plaintiff,<br><br>v.<br><br>R. STEVEN THARRATT, et al.,<br><br>          Defendants. | Case No.: 16-cv-00457-LAB (DHB)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE REGARDING MOTION TO DISMISS CIVIL RIGHTS COMPLAINT**<br><br>**(ECF No. 37)** |

   Plaintiff Robert McCullock[1] ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperi*s, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on February 18, 2016, against Defendants R. Steven Tharratt, Daniel Paramo, Maryann Glynn, Jin Kul Yu, Steven Roberts, and R. Walker. (ECF No. 1 ("Compl.").) On July 29, 2016, Defendants Tharratt, Paramo, Glynn, Roberts, and Walker filed a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and on the grounds of qualified immunity. (ECF No. 15.) On January 20, 2017, this Court

---

  [1]   Plaintiff's prison records indicate Plaintiff's name is spelled Robert McCallock.

issued a Report and Recommendation, recommending that the Honorable Larry A. Burns grant Defendants' Motion to Dismiss with leave to amend, and issue an order to show cause why Defendant Jin Kul Yu should not be dismissed without prejudice for failure to prosecute, as he was not served with the Complaint. (ECF No. 23.) On February 16, 2017, Judge Burns adopted the Report and Recommendation and dismissed the Complaint with leave to amend. (ECF No. 30.)

On April 5, 2017, Plaintiff filed a First Amended Complaint ("FAC") against Defendants Steven Tharratt, Maryann Glynn, Steven Roberts, R. Walker, Daniel Paramo, and Jin Kul Yu (collectively, "Defendants"). (ECF No. 36.) On April 12, 2017, Defendants filed a Motion to Dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and on the grounds that Plaintiff is not entitled to the injunctive and declaratory relief requested in the FAC. (ECF No. 37.)

In accordance with Civil Local Rule 72.3, Defendants' Motion to Dismiss is referred to the magistrate judge for a Report and Recommendation. After a thorough review of the pleadings, the parties' papers, and all supporting documents, the Court hereby **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED**.

I.  **FACTUAL BACKGROUND**

Plaintiff is, and was at all relevant times, a prisoner confined at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California. (FAC at 11.) Plaintiff alleges he had a specialist-recommended biopsy in February 2015. (*Id*. at 15, Exh. A(a).) On March 4, 2015, Defendant Dr. Yu, a primary care provider at RJD, documented in a progress note that the pathology report on the biopsy was not available and stated that s/he would obtain the report "and follow-up with [Plaintiff] to address this and rule out cancer." (*Id*. at 12-13, 15, Exh. A(a).) On March 6, 2015, Defendant Dr. Yu obtained and initialed review of the pathology report. (*Id*.) The report allegedly noted a finding of "squamous cell carcinoma at deep margins." (*Id*.) However, Plaintiff alleges Defendant Dr. Yu did not provide him with notice of the results or take action at that time or at subsequent appointments. (*Id*. at 12, 15, 31, Exh. A(a).)

On April 29, 2015, a specialist seeing Plaintiff via tele-medicine for valley fever reviewed the pathology report's finding, informed Plaintiff he had cancer, and discussed it in his report. (*Id*. at 15, 31, Exh. A(a), 35.) The specialist recommended that Plaintiff be referred to another specialist. (*Id*. at 15, 31, 35, Exh. A(a).) On May 1, 2015, upon review of the report, Defendant Dr. Yu generated a "Request for Service" for plastic surgery and prioritized the referral as "routine." (*Id*.) In the Request for Service, Defendant Dr. Yu allegedly does not state that the pathology report finding cancer had been issued approximately three months earlier. (*Id*.)

On May 14, 2015, three specimens were excised from Plaintiff. (*Id*. at 34, Exh. B.) The specimens, taken from both clavicles and the left shoulder, were negative for cancer. (*Id*.) The final diagnosis was mild actinic keratosis in all three specimens. (*Id*. at 16, 34, Exh. B.) According to a Memorandum from California Correctional Health Care Services ("CCHCS"), dated June 2, 2015, Plaintiff did not have to follow up with plastic surgery at that time; however, he will require surveillance due to his higher risk for future malignancy. (*Id*. at 34, Exh. B.) This will be determined by his primary care provider and dermatology, if needed. (*Id*.)

Plaintiff attaches to his FAC a Training Participation Sign-In Sheet dated on or about May 12, 2015, which reflects that Defendants Walker and Roberts met with Defendant Dr. Yu regarding Plaintiff. (*Id*. at 33.)

Plaintiff also attaches to his FAC a June 2014 CCHCS Utilization Management ("UM") Program Policy, which was enacted to "ensure the appropriate use of limited health care resources." (*Id*. at 21-30.) The Chief Executive Officer ("CEO") at each institution, who Plaintiff alleges is Defendant Glynn at RJD, is responsible for the implementation of this policy at the local level, and the Statewide Chief Medical Executive, who Plaintiff alleges is Defendant Tharratt, is responsible for the implementation of this policy at Headquarters. (*Id*. at 11-12, 22.) In addition, Plaintiff attaches to his FAC the UM Medical Services Review Procedure and the UM Inter-Rater Reliability Procedure, both dated June 2014. (*Id*. at 23-30.)

The UM Medical Services Review Procedure covers the review process for "high cost, high risk, exceptional, and complex cases." (*Id.* at 23.) Upon receipt of a CDCR Form 7243, the "institution UM Nurse or designee" shall review all health care provider service requests at the first level, and forward them to second level review for approval or denial. (*Id.* at 23-24.) At the second level, the Chief Medical Executive (Defendant Roberts) or a designee shall review and approve or deny the requested services. (*Id.* at 13, 24.) Appealed cases shall be heard by the Institutional UM Committee ("IUMC") at the third level of review. (*Id.*) If the request is deferred, referred to the next level of review, or denied, the reason shall be documented by the Chief Medical Executive (Defendant Roberts), Chief Physician and Surgeon (Defendant Walker), or a designee, and forwarded to the UM Nurse for forwarding to the primary care provider. (*Id.* at 13-14, 24.) The primary care provider shall "document the decision and provide the patient-inmate with alternate strategies during the next visit, within 30 days of the deferral or denial of the specialty service." (*Id.*) The fourth and final level of review is performed by the Headquarters Utilization Management Committee ("HUMC"), which consists of the Deputy Medical Executive or designee, and Executive or Managerial representation from Medical, Nursing and Mental health, if appropriate. (*Id.* at 27.) The process also provides that the institution Chief Medical Executive (Defendant Roberts), Chief Physician and Surgeon (Defendant Walker), or designee shall review all emergency consultations or procedures. (*Id.* at 13-14, 23.)

The UM Medical Services Review Procedure further provides that the IUMC, consisting of the Institution Chief Medical Executive (Defendant Roberts), Institution CEO (Defendant Glynn), Institution Chief Physician and Surgeon (Defendant Walker), and Institution Warden (Defendant Paramo), shall, among other things, ensure institutional compliance with all UM program policies and procedures, and ensure that an institutions' medical staff receive training on UM policies and procedures. (*Id.* at 12-14, 25.)

In this context, Plaintiff alleges that Defendant Tharratt, as statewide Chief Medical Executive for CCHCS, is responsible for implementing the CCHCS UM policy, and this

policy set in motion the alleged constitutional violations. (*Id.* at 2, 11.) Plaintiff further alleges that Defendant Tharratt was "informed of deficiencies at RJDCF via Plata (case 3:01-cv-01351-THE) but has acquiesced." (*Id.* at 11.) Plaintiff also alleges that Defendant Tharratt was deliberately indifferent to deficient performance, and "created policy or custom under which unconstitutional practices occurred," including "a violation of [Plaintiff's] protected liberty interest in bodily integrity." (*Id.*)

Plaintiff alleges that Defendant Paramo, as warden of RJD, is "legally responsible for the operation" of the facility and the welfare of the inmates. (*Id.* at 12.) Plaintiff alleges Warden Paramo was informed, and failed, and is still failing to prevent violations of constitutional rights, and is a committee member of the UM Medical Services Review. (*Id.*)

Plaintiff further alleges that Defendant Glynn, as the CEO of CCHCS at RJD, is "responsible for implementation of policy." (*Id.*) Plaintiff alleges that Defendant Flynn is a reviewer of requests for services as a member of the IUMC, and is responsible for medical policy at RJD. (*Id.*)

Next, Plaintiff alleges that Defendant Roberts, as the Chief Medical Executive at RJD, is "legally responsible for all operations" of CCHCS and for the supervision and training of medical staff. (*Id.* at 13.) Plaintiff further alleges that Defendant Roberts is the chairperson of the IUMC, a reviewer of consultations or procedures, and a reviewer of completed requests for services. (*Id.*) In this capacity, Plaintiff alleges Defendant Roberts had reason to know of the alleged constitutional violation and did nothing to stop the infliction. (*Id.*) Plaintiff also alleges that Defendant Roberts was informed of the violations via CDCR complaints with Log Nos. RJD-D15-1861, RJD1503343, RJD15053445, the CCHCS memorandum of June 2, 2015, and the Health Care Evaluation in Plata. (*Id.*)

Lastly, Plaintiff alleges Defendant Walker, as Chief Physician and Surgeon at RJD, is "legally responsible for supervision and training of his subordinates," as shown by the training sign-in sheet Plaintiff attaches to the FAC. (*Id.* at 14, 33, Exh. H.) Plaintiff alleges that a thirty minute training of Defendant Dr. Yu "after the fact" by Defendants Walker

and Roberts was "deficient and useless" to ensure the provision of adequate medical care. (*Id.* at 14.) Plaintiff further alleges that Defendant Walker is a reviewer of requests for services and "saw no wrong in changing RFS [request for service] from priority to routine or that there was no alternative treatment strategies as set out in CCHCS policy and procedures." (*Id.*) Plaintiff alleges that Defendant Walker's acquiescence caused Plaintiff's unnecessary surgery and violated his constitutional rights. (*Id.*)

On May 5, 2015, Plaintiff filed a Citizen's Complaint. (*Id.* at 16, 35, Exh. D.) In the complaint, he alleges that "[w]hile at an appointment with the Valley Fever Specialist, I was informed I had cancer. This information should be given by ones 'PCP,' primary care physician, not found by chance." (*Id.* at 35.) Plaintiff's complaint was rejected at the First Level on May 30, 2015, and subsequently assigned to the Health Care Appeals Office for response on or around June 4, 2015, and assigned Log No. RJD HC 15053445. (*Id.* at 16-17.) The appeal was denied on October 8, 2015. (*Id.*)

On May 29, 2015, Plaintiff filed a separate Patient/Inmate Health Care Appeal (Log No. 15053343), alleging that he was "forced to use staff that is plaintiff's abuser." (*Id.* at 17.) The appeal was rejected by Defendants R. Walker and M. Glynn. (*Id.*)

On July 23, 2015, Plaintiff filed another Patient/Inmate Health Care Appeal (Log No. 15053656) seeking monetary compensation for unnecessary surgery for misdiagnosed squamous cell carcinoma. (*Id.* at 17, 36, Exh. F.)

Plaintiff also filed a Government Claims Form. (*Id.* at 17.) On August 20, 2015, the Victim Compensation and Government Claims Board rejected Plaintiff's claim. (*Id.* at 17, 38, Exh. G.)

In his FAC, Plaintiff brings a claim against Defendants in their individual and official capacities for deliberate indifference to medical needs and cruel and unusual punishment, in violation of the Eighth Amendment. (*Id.* at 2-6, 17.) He seeks an injunction preventing Defendants from keeping Plaintiff at a deficient facility that has been "deemed the worst medical in the state," and a transfer to a facility that gives competent medical

care. (*Id.* at 9, 30.) He also seeks declaratory relief, compensatory damages, punitive damages, and pain and suffering, emotional distress, and scarring damages. (*Id.* at 9, 18.)

On April 12, 2017, Defendants filed a Motion to Dismiss. (ECF No. 37.) On May 25, 2017, Plaintiff filed an opposition. (ECF No. 42.) Defendants filed a reply in support of their motion on May 31, 2017. (ECF No. 43.) On June 8, 2017, Plaintiff filed a sur-reply. (ECF No. 45.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). For a plaintiff to overcome a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion to

dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 570 (when plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Because Rule 12(b)(6) focuses on the sufficiency of a claim rather than the claim's substantive merits, "[o]rdinarily, a court may look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Generally, a court may not consider material beyond the complaint in ruling on a Rule 12(b)(6) motion. *Schneider v. Cal. Dep't of Corr. & Rehab.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

///

## B. Standards Applicable to *Pro Se* Litigants in Civil Rights Actions

"In a civil rights case where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford [the] plaintiff the benefit of any doubt." *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).

Nevertheless, a court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)). Thus, before a *pro se* civil rights complaint may be dismissed, the Court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim–Panahi*, 839 F.2d at 623-24. But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

///
///
///
///
///
///
///
///

## III. DISCUSSION[2]

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). It imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc). Here, there appears to be no dispute that Defendants acted under color of state law in their official capacities as employees of RJD or CCHCS.[3] "[G]enerally, a public employee acts under color of state

---

[2] Plaintiff attaches additional exhibits to his opposition regarding certain unrelated health care appeals he filed in 2016 and 2017, and an undated article on inmate health care appeals. (ECF No. 42 at 10-15.) On October 11, 2017, Plaintiff also filed a Request for Judicial Notice, asking the Court to take judicial notice of a CCHCS "Notice of Change to Health Care Regulations" regarding the administration of the health care grievance process. (ECF No. 46.) As discussed above, in ruling on a motion to dismiss, a court may consider the face of the complaint, along with documents attached thereto, documents incorporated by reference in the complaint, and material subject to judicial notice. *Richie*, 342, F.3d at 907-08; *Van Buskirk*, 284 F.3d at 980. As Plaintiff failed to attach the additional appeals and article to his FAC, and the documents are unrelated to his present claims, the Court declines to consider them in deciding the present motion. However, although Defendants did not have an opportunity to address the document attached to Plaintiff's Request for Judicial Notice in its filings, as Plaintiff is proceeding *pro se*, the document does not affect the Court's findings, and the authenticity has not been disputed, the Court will take judicial notice of the document and consider it in deciding the present motion. *See In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1061 (C.D. Cal. 2012) (government publications and matters of public record are proper subjects of judicial notice).

[3] Defendant Tharratt is alleged to be the Statewide Chief Medical Executive for CCHCS. (FAC at 2, 11.) Defendant Paramo is alleged to be the Warden of RJD. (*Id*. at 2, 12.) Defendant Glynn is alleged to be the CEO of CCHCS at RJD. (*Id*. at 2, 12.) Defendant Roberts is alleged to be the Chief Medical Executive at RJD. (*Id*. at 3, 13.)

law while acting in his [or her] official capacity or while exercising his [or her] responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). Thus, Plaintiff's federal claims turn on the second inquiry, namely, whether Defendants deprived Plaintiff "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

In the FAC, Plaintiff first alleges Defendants were deliberately indifferent to his medical needs when Defendant Dr. Yu obtained and documented a pathology report stating Plaintiff had "squamous cell carcinoma at deep margins," but did not follow up with Plaintiff in a timely manner or take appropriate action. (FAC at 5, 17.) Second, Plaintiff alleges Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by conducting an unnecessary surgery. (*Id.* at 6, 17.)

### A. Deliberate Indifference to Serious Medical Needs

#### 1. Applicable Law

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). This principle "establish[es] the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.* The Supreme Court has noted that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.*; *see also West*, 487 U.S. at 54-55.

Prison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment if they are deliberately indifferent to his serious medical needs. *See Gamble*, 429 U.S. at 104-06; *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to

---

Defendant Walker is alleged to be the Chief Physician and Surgeon at RJD. (*Id*. at 3, 14.) Defendant Yu is alleged to be a primary care provider at RJD. (*Id*. at 2, 12.)

medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Gamble*, 429 U.S. at 104-05 (footnotes omitted). To establish deliberate indifference to serious medical needs, the Ninth Circuit requires a two-step inquiry. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

First, the prisoner must have a serious medical need. *Id.* "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Gamble*, 429 U.S. at 104), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). In making this determination, courts should consider whether "a reasonable doctor or patient would find [the prisoner's condition] important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990); *Hunt*, 865 F.2d at 200-01).

Second, the prisoner must establish that prison officials exhibited deliberate indifference to the serious medical need. *Jett*, 439 F.3d at 1096. This requirement "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1059). The indifference to medical needs also must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Gamble*, 429 U.S. at 106; *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.") (citing *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) ("Mere medical malpractice does not constitute cruel and unusual punishment."); *Wood*, 900 F.2d at 1334 (stating that even gross negligence is insufficient to establish a constitutional violation)).

The deliberate indifference standard includes a subjective intent requirement and is not met "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991). Courts must focus on the seriousness of the prisoner's medical needs and the nature of the defendants' response to those needs. *See McGuckin*, 974 F.2d at 1059. Differences in judgment between an inmate and prison medical personnel regarding appropriate medical care are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

"Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation omitted). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id*. (citation and internal quotation marks omitted); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). In order to demonstrate a sufficient causal connection, "a plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury." *Starr*, 652 F.3d at 1207 (quoting *Redman v. Cnty. Of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991)). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others,' . . . , or by 'knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Id*. at 1207-08 (internal citations omitted and alteration in original).

"A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference

to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted); *see also Starr*, 652 F.3d at 1207 ("[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates."). Supervisory liability may also exist "if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation.'" *Crowley*, 734 F.3d at 977 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)); *see also OSU Student Alliance v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012) ("Advancing a policy that requires subordinates to commit constitutional violations is always enough for § 1983 liability, no matter what the required mental state, so long as the policy proximately causes the harm—that is, so long as the plaintiff's constitutional injury in fact occurs pursuant to the policy.").

2. Analysis

Defendants do not dispute, and the Court agrees, that Plaintiff's skin cancer, or suspected skin cancer, constitutes a serious medical need. Therefore, the Court now turns to whether Plaintiff's allegations are sufficient to plausibly suggest that Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. In the FAC, Plaintiff makes two claims. The first claim arises out of allegations there was a delay in medical care between the time Defendant Dr. Yu initialed receipt of the pathology report finding that Plaintiff had skin cancer and the subsequent referral for services. The second claim arises out of the excision of skin lesions on May 14, 2015 that Plaintiff deems "unnecessary" because the resulting biopsy disclosed no skin cancer.

a. *Delay in Following Up on Pathology Report*

Defendants argue they cannot be held liable for deliberate indifference to medical needs when Defendant Dr. Yu failed to immediately follow up with Plaintiff after receiving the February 2015 pathology report because Plaintiff has not alleged any harm. (ECF No. 37-1 at 7.) Although Plaintiff alleges that a pathology report following a specialist-

recommended biopsy in February 2015 found that Plaintiff had "squamous cell carcinoma at deep margins," Plaintiff also alleges that as of May 14, 2015, a biopsy determined that he only had "mild actinic keratosis" and no current malignancy. (FAC at 15-16, 34, Exh. B.) Accordingly, Plaintiff has not alleged any harm resulting from Defendant Dr. Yu's delay in care from March 6, 2015 to May 14, 2015.

Deliberate indifference can be shown when "prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *McGuckin*, 974 F.2d at 1059 (citation omitted). However, a mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay was harmful. *Id.* at 1060 (citing *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)); *see also Gamble*, 429 U.S. at 106 ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs"); *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (finding that the prisoner must establish that a delay in treatment caused harm); *Wood*, 900 F.2d at 1335 (finding that a delay in treatment does not constitute an Eighth Amendment violation if the delay does not cause harm); *Hunt*, 865 F.2d at 200 ("[D]elay in providing a prisoner with [medical] treatment, standing alone, does not constitute an [E]ighth [A]mendment violation."). Although an allegation of "substantial harm" is not required, "a prisoner can make no claim for deliberate medical indifference unless the denial was harmful." *McGuckin*, 974 F.2d at 1060; *see also Jett*, 439 F.3d at 1096.[4]

As Plaintiff has failed to allege any harm, his cause of action for deliberate indifference to his serious medical needs against Defendants arising out of the alleged delay

---

[4] To the extent Plaintiff alleges the delay caused harm in the form of emotional distress, this allegation is insufficient. Under the Prison Litigation Reform Act of 1995, Pub.L. No. 104–134, 110 Stat. 1321 (1996), a plaintiff cannot premise his or her constitutional violation solely on a mental or emotional injury. *See* 42 U.S.C. § 1997e(e); *Oliver v. Keller*, 289 F.3d 623, 627-30 (9th Cir. 2002).

in responding to the February 2015 pathology report must be dismissed.[5]

   b.   *Unnecessary Surgery*

Plaintiff's second claim is for "cruel and unusual punishment" in violation of the Eighth Amendment due to "unnecessary surgery." (FAC at 6, 17.) Plaintiff alleges that he never had squamous cell carcinoma and didn't need surgery, but that he underwent surgery anyway. (*Id.* at 20, 36.) Plaintiff further alleges that his medical diagnosis was "mild actinic keratosis" and that he was appropriately receiving treatment for this condition from the skin specialist at Tri-City Medical Center. (*Id.* at 16.) In his opposition to Defendants' Motion to Dismiss, Plaintiff clarifies that this case is "based on an unnecessary surgery from a misdiagnosis." (ECF No. 42 at 1.)

However, "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *McGuckin*, 974 F.2d at 1059 (citation omitted). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* (citing *Gamble*, 429 U.S. at 106); *see also Toguchi*, 391 F.3d at 1057 ("A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment."). Moreover, a difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference. *Sanchez*, 891 F.2d at 242; *see also Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) ("[A] plaintiff's showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another [i]s insufficient, as a matter of law, to establish deliberate indifference.").[6] To show deliberate indifference, the

---

[5] The Court notes that Plaintiff claims in his opposition that he "never made a claim based on delay." (ECF No. 42 at 7.)

[6] Courts in the Ninth Circuit have routinely held that an allegation of unnecessary surgery is insufficient to state a claim for deliberate indifference to serious medical needs. *See, e.g., Merritt v. Dang*, No. CVF046727OWW LJO P, 2006 WL 657125, at *2 (E.D. Cal. Mar. 14, 2006), report and recommendation adopted, 2006 WL

16

plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the defendants "chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson*, 90 F.3d at 332 (internal citations omitted).

Here, Plaintiff alleges that he had a "specialist-recommended biopsy" in February 2015. (FAC at 15, 31, Exh. A(a).) On March 6, 2015, Defendant Dr. Yu allegedly received and initialed the pathology report, which noted a finding of "squamous cell carcinoma at deep margins," *i.e.* skin cancer. (*Id.* at 12-13, 15, 31, Exh. A(a).) Plaintiff further alleges that Defendant Dr. Yu apparently did not understand the pathology report, and certainly did not follow up with Plaintiff or take appropriate action. (*Id.* at 12-13, 15, 31, 35, Exh. A(a).) On May 1, 2015, Defendant Dr. Yu did ultimately generate a request for service for plastic surgery. (*Id.* at 15, 31, Exh. A(a).) As a result, on May 14, 2015, biopsies were conducted and three specimens were excised from both of Plaintiff's clavicles and his left shoulder. (*Id.* at 34, Exh. B.) The ultimate finding was that Plaintiff did not have skin cancer, but mild actinic keratosis in all three specimens. (*Id.*) However, CCHCS determined that Plaintiff "will require [ongoing] surveillance due to his higher risk for future malignancy." (*Id.*) In reliance on these allegations, Plaintiff claims Defendants are liable because he was misdiagnosed and unnecessary surgery was performed.

Based on the foregoing, Plaintiff fails to state sufficient facts to raise a cognizable Eighth Amendment claim. Plaintiff simply does not allege facts sufficient to show that Defendants "knew of and disregarded a serious risk to his health" when he was referred for

---

1085081 (E.D. Cal. Apr. 25, 2006) (finding that the plaintiff failed to allege an Eighth Amendment claim where the doctors treated him for lung cancer with surgery without first ordering a biopsy which would have revealed that surgery was unnecessary because the allegations only implied a misdiagnosis or disagreement with treatment); *Villegas v. Cate*, No. 1:10-cv-01917-AWI-SKO PC, 2012 WL 4863065, at *4 (E.D. Cal. Oct. 11, 2012), report and recommendation adopted, 2012 WL 5988394 (E.D. Cal. Nov. 29, 2012) (finding allegations that a spinal surgery which was later determined to be unnecessary or could possibly have been avoided insufficient to state a claim for deliberate indifference).

a biopsy, or that Defendants chose or approved a course of treatment that was "medically unacceptable under the circumstances." *See Farmer*, 511 U.S. at 837; *Jackson*, 90 F.3d at 332. Plaintiff appears to allege that Defendant Dr. Yu – and any Defendant who reviewed the request for service – should have known that Plaintiff did not have squamous cell carcinoma, and should have disregarded the pathology report, because Plaintiff did not have growths that "appear as flaky, scaly areas that don't heal" or are "darkened or gray and feel hard,"[7] and therefore chose a medically unacceptable course of treatment. (*See* FAC at 16; ECF No. 42 at 1-3.) However, in light of Plaintiff's allegations that Defendants were in possession of, and aware of, a recent pathology report finding that Plaintiff had skin cancer, Plaintiff's contention that Defendants should not have referred him for a biopsy to test various spots for skin cancer, but rather only treated him for actinic keratosis, amounts to, at most, a difference of opinion in medical treatment between the prisoner and medical staff.[8] As allegations of a misdiagnosis or difference of opinion are insufficient to establish that Defendants were deliberately indifferent to serious medical needs, Plaintiff has failed to state a claim.

---

[7] Plaintiff alleges the Merck Manual of Medical Information relating to squamous cell carcinoma states: "These growths appear as flaky, scaly areas that don't heal. They may also be darkened or gray and feel hard." (FAC at 16.) Plaintiff further alleges the manual states that "Actinic Keratoses [sic] usually can be removed by freezing with liquid nitrogen and or ointment containing fluorouracil," and that Plaintiff was receiving this treatment from the skin specialist at Tri-City medical center. (*Id.*)

[8] The Court notes that pursuant to the UM Medical Services Review Procedure attached to the FAC by Plaintiff, Defendants were not required to discuss alternate medical strategies with Plaintiff prior to referral for a biopsy. (*See* FAC at 23-24.) Under the review procedure, Defendant Dr. Yu, as the primary care provider, was to provide Plaintiff with alternate strategies if his request for services was deferred, referred to the next level of review, or denied. (*Id.* at 24.) As Plaintiff underwent the biopsy shortly after the referral, there are no allegations suggesting that the original requested service was deferred or denied, thus necessitating a discussion about an alternate course of treatment under the review procedure.

For the foregoing reasons, the Court finds Plaintiff has failed to sufficiently allege a deliberate indifference claim against Defendants and recommends that Defendants' Motion to Dismiss be granted for failure to state a claim.

## IV. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Larry A. Burns pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.3. For the reasons outlined above, IT IS HEREBY RECOMMENDED that the District Judge issue an order:

1. Approving and adopting this Report and Recommendation; and
2. Granting Defendants' Motion to Dismiss.

IT IS FURTHER ORDERED that no later than **December 8, 2017**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be filed with the Court and served on all parties no later than **December 18, 2017**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: November 8, 2017

LOUISA S PORTER
United States Magistrate Judge